■ SIDNEY PAL, Appellant, v. CIPORA PAL, Respondent.—In this action in which plaintiff was granted a judgment of divorce by the Supreme Court, Kings County, on January 11, 1973, he appeals from an order of the same court, dated August 8, 1973. The judgment awarded defendant custody of the parties' four infant children, with visitation rights to plaintiff, directed the parties to submit themselves to a rabbinical tribunal as to whether plaintiff should be directed to take the necessary steps to grant a Jewish divorce (a " get ") and included provisions with respect to the selection of rabbis to constitute the rabbinical tribunal. The order (1) on defendant's cross motion (a) appointed a certain rabbi as plaintiff's designee, (b) directed that rabbi and the rabbi who had been designated by defendant to select the third rabbi to serve on the

rabbinical tribunal and (c) directed that that tribunal furnish the court with a written translation of its decision; and (2) provided that plaintiff's motion to punish defendant for contempt for alleged violation of the provision in the judgment concerning visitation be held in abeyance pending the hearing and determination of the rabbinical tribunal. Order reversed, without costs, and plaintiff's motion and defendant's cross motion denied. Special Term had no authority to, in effect, convene a rabbinical tribunal (cf. *Margulies* v. *Margulies*, 42 A D 2d 517). However, plaintiff's motion to punish defendant for contempt should have been denied, as one who seeks such relief must come into court with clean hands. Plaintiff's conduct in not complying with the terms of a stipulation incorporated into the judgment of divorce was such as to preclude the granting of his motion. Gulotta, P. J., Shapiro, Benjamin and Munder, JJ., concur; Martuscello, J., dissents and votes (1) to modify the order by striking therefrom the fifth ordering paragraph, which directed that plaintiff's motion to punish defendant for contempt be held in abeyance, and substituting therefor a provision setting said motion down for a hearing and (2) to affirm the order as so modified, with the following memorandum: Plaintiff and defendant were formerly husband and wife and both are of the Jewish faith. Plaintiff obtained a divorce on January 11, 1973, when defendant withdrew her answer and counterclaim in reliance upon a stipulation of the parties, made in open court and later carried into the judgment of divorce, so far as pertinent, as follows: "each of the parties hereto hereby submit themselves to a Rabbinical Tribunal on the question of whether the Plaintiff shall be directed to take all steps necessary to grant a Jewish divorce [Get] and the parties shall be bound by the decision of said Rabbinical Tribunal in accordance with Article 75 of the CPLR" and additionally that "in the event that either of the parties fails to choose a Rabbi * * * within one week or in the event that the two Rabbis chosen by the parties * * * shall fail to select a third Rabbi, then this Court shall * * * select any competent Rabbi for the one that failed to so choose a third Rabbi". While the proceeding was pending before the rabbinical tribunal, plaintiff, in April, 1973, moved to punish defendant for contempt, alleging that she had deprived him of visitation rights. When plaintiff's designated rabbi withdrew from the tribunal, on May 18, 1973, defendant cross-moved in part to have the court designate a replacement for the withdrawn rabbi. In opposition to defendant's cross motion, plaintiff did not challenge the court's power to select a rabbi for him, but merely claimed he was making diligent efforts to obtain the services of another rabbi and that defendant should not be permitted to enforce the judgment of divorce with respect to the rabbinical tribunal until she shall have complied with the visitation provisions of the judgment. Special Term granted the above-stated part of defendant's cross motion and designated Rabbi Benjamin Scharfman, who had theretofore been designated as the third rabbi, to serve as plaintiff's designee on the rabbinical tribunal. The majority of this court is holding that Special Term had no authority to, in effect, convene a rabbinical tribunal, citing *Margulies* v. *Margulies* (42 A D 2d 517). I disagree. Special Term did not convene a rabbinical tribunal, or impose any religious discipline upon plaintiff, or inquire into any ecclesiastical or doctrinal questions (cf. *Rector, Churchwardens & Vestrymen of Church of Holy Trinity* v. *Melish*, 4 A D 2d 256, affd. 3 N Y 2d 476), but was merely giving effect to the express language of the stipulation, agreed to by both parties and later included in the judgment of divorce, by appointing a replacement for plaintiff's rabbi, who, with defendant's rabbi, would select a third rabbi to form the rabbinical tribunal. Nor is *Margulies* apposite to the case at bar. In *Margulies* the parties were civilly divorced, but appeared in court to resolve subsequent matrimonial

disputes. As part of the resolution of the dispute between them the husband stipulated in open court that he would "appear before a Rabbi to be designated for the purposes of a Jewish religious divorce". The husband failed to comply with the stipulation and was twice held in contempt and fined therefor, subject to the provision that he could purge himself by paying the fines and appearing before a Jewish court for the purpose of obtaining a divorce. The husband refused to comply with the contempt orders and was therefore, by a third order, committed to jail for a period of 15 days, with the same opportunity to purge himself. On appeal from the third order, the Appellate Division, First Department, struck from that order the provision relating to the husband's civil commitment and substituted therefor a provision that he could purge himself of the contempt by paying the fines previously imposed or, alternatively, by appearing and participating in a Jewish divorce. The First Department refused to let stand the Special Term's exercise of its power in order to compel the husband to perform his agreement, i.e., to participate in a Jewish divorce. *Margulies* is at once distinguishable from the instant case in that there the purpose of the stipulation was to compel the granting of a Get, while in the case at bar, court intervention was sought to compel the husband to designate an arbitrator (a rabbi) and merely appear before a rabbinical tribunal, pursuant to the parties' stipulation (see CPLR 7504). Accordingly, this court should not anticipate or speculate as to the religious consequences of plaintiff's mere appearance and participation before a rabbinical tribunal. Moreover, the decision in *Margulies* was based in large part upon the premise that Jewish ecclesiastical law requires that the husband grant a Get of his own free will under all conditions; and, therefore, any act done under compulsion of the court would amount to a nullity. However, in *Matter of "Rubin" v. "Rubin"* (75 Misc 2d 776, 781), Judge Gartenstein pointed out in a scholarly opinion that, under certain circumstances, a Get may be obtained against the will of one or even both parties. Far more important to the case at bar is the fact that the Appellate Division in *Margulies* did uphold the underlying orders of contempt and the fines imposed therein and permitted the husband to purge his contempt by paying the fines or by complying with his stipulation. The court stated (42 A D 2d 517-518, *supra*): "We agree that the defendant may not, under these circumstances, be incarcerated for his failure to honor the stipulation (incorporated into a court order) and accordingly, vacate that portion of the order directing his commitment. However, we believe that the fines imposed upon defendant by the prior orders should stand. Defendant failed to perfect any appeals from the prior orders fining him for his contempt nor did he obtain a stay of the provisions contained in those orders. The initial order was entered upon the parties' open court stipulation concerning the disputes arising after the judgment of divorce, and defendant voluntarily agreed to perform certain acts. The court had jurisdiction over the parties and the subject matter, and even if the orders were erroneous, the defendant was obligated, in the absence of a stay, to obey the court's mandate until vacated or reversed. * * * In any event, there was abundant basis upon which to conclude that defendant's behavior was contumacious. Immediately after the open court stipulation was entered into, defendant, who has remarried, and who accepted the benefits of the agreement, disavowed his representations made in open court. At the time when he agreed to participate in the religious divorce he was well aware of the consequences and nature of the act and that it could only be obtained upon his assertion to the rabbinical court that it was being sought of his own free will. Defendant was also well aware that plaintiff could not enter into a valid remarriage under Jewish law until the 'get' had been granted. It is not indicated that any sub-

sequent developments caused defendant to change his mind and upon this record we can only conclude that defendant never intended to carry out the terms of the open court stipulation and that he utilized the court for his own ulterior motives. Such behavior may not be countenanced." Similarly, in the case at bar the agreement between the parties became part of the judgment of divorce. The courts should not be powerless to prevent a husband from ignoring selected provisions of a judgment of divorce. The effect of the majority's holding herein is that plaintiff can remarry, while his former wife, who relied on the judgment, cannot. In *Koeppel* v. *Koeppel* (138 N. Y. S. 2d 366) the plaintiff brought an action against her former husband for specific performance of a preannulment agreement providing as follows (pp. 369–370) : "Upon the successful prosecution of the Wife's action for the dissolution of her marriage, the Husband and Wife covenant and agree that he and she will, whenever called upon, and if and whenever the same shall become necessary, appear before a Rabbi or Rabbinate selected and designated by whomsoever of the parties who shall first demand the same, and execute any and all papers and documents required by and necessary to effectuate a dissolution of their marriage in accordance with the ecclesiastical laws of the Faith and Church of said parties." The defendant moved to dismiss the complaint, contending, *inter alia,* that a decree of specific performance would interfere with his freedom of religion under the Federal Constitution. Special Term, in denying defendant's motion, stated (p. 373) : "Complying with his agreement would not compel the defendant to practice any religion * * *. His appearance before the Rabbinate to answer questions and give evidence needed by them to make a decision is not a profession of faith. Specific performance herein would merely require the defendant to do what he voluntarily agreed to do." No appeal was taken by the husband from that decision. Thereafter, the case went to trial and the complaint was then dismissed. This court upheld the dismissal, not on the ground that the agreement was unenforcible per se but because its particular terms were too indefinite to support a judgment for specific performance (*Koeppel* v. *Koeppel*, 3 A D 2d 853). Moreover, as heretofore noted, plaintiff did not challenge, either at Special Term or on this appeal, Special Term's power to select a rabbi for him. Plaintiff alleged that he was going through with the rabbinical tribunal, but was finding it difficult to get a replacement. Under the applicable law and facts herein, Special Term was well within its power in appointing a rabbi as plaintiff's designee on the rabbinical tribunal. Finally, it occurs to me that Special Term erred in holding plaintiff's motion to punish defendant for contempt in abeyance. The majority is holding that plaintiff's motion to punish defendant for contempt should have been denied since plaintiff did not come into court with clean hands. I disagree. The provisions in the final judgment of divorce relating to plaintiff's visitation rights and the submission of the parties to a rabbinical tribunal were not interdependent. Even if the provisions were interdependent, it cannot be conclusively stated that the husband reneged on his stipulation regarding the rabbinical tribunal. While defendant affirmed that plaintiff had told his children he would not attend the rabbinical tribunal and would stall the proceedings, he denied these allegations, claiming that he had told his children he would not consent to the Get but would oppose his wife at the rabbinical tribunal. This was his right even under the language of the stipulation (as set forth in the judgment), i.e., "each of the parties hereby submit themselves to a Rabbinical Tribunal on the question of *whether* the plaintiff shall be directed to take all steps necessary to grant a Jewish divorce" [emphasis supplied]. Moreover, the record indicates that plaintiff was directed to pay alimony and support for four children and has complied with the terms

of the stipulation and judgment relating to that. Consequently, plaintiff is entitled to an immediate hearing on his application to punish defendant for contempt and the order should be modified accordingly.