OPINION OF THE COURT
Simons, J.
This action involves a dispute between plaintiff First Presbyterian Church of Schenectady (First Church), and its denominational church organization, defendant The United Presbyterian Church in the United States of America (UPCUSA). It arose when First Church withdrew from the denominational church because of a disagreement over UPCUSA’s financial support of radical political groups and individuals. Plaintiffs seek a declaration of their independent status and a permanent injunction preventing defendants from interfering with plaintiffs’ use and enjoyment of the local church property. The issue is whether the court may resolve the dispute between the parties as it would any other or must, consistent with the prohibition against church/State entanglement contained in the First Amendment to the United States Constitution, defer to the determination of the denominational church. We hold that it may resolve the dispute and that plaintiffs are entitled to injunctive relief. We therefore reverse the order of the Appellate Division dismissing the complaint.
*114 Prior to January 24,1977, First Church was a member of defendant Presbytery of Albany and defendant UPCUSA. UPCUSA exhibits a hierarchical or connectional form of church government, as differentiated from a congregational form. Under the hierarchical system, authority is vested in the first instance in the governing body of the local church — the Session — but its actions are subject to review and control by higher church bodies, in ascending order of authority, the Presbytery, the Synod and the General Assembly. To contrast, a congregational type church is independent of higher church authority and is self-governing.
First Church was organized in 1760, during the colonial period, and first incorporated on January 14, 1803, pursuant to chapter 79 of the Laws of 1801. It became a member of the Presbytery of Albany in 1770 and UPCUSA’s predecessor denomination in 1789. It retained that status until January, 1977. During the 1970’s members of the church’s 440 person congregation expressed discontent with UPCUSA and petitioned defendant Presbytery of Albany to be dismissed to another denomination. The request was denied. Instead, defendant Presbytery appointed an administrative commission to investigate the activities of the Session of First Church and to file a report containing its findings and recommendations. On January 24,1977, at its annual meeting, First Church passed a resolution by a final vote of334 to 4, severing its relations with defendants and retaining title to all real or personal property held by the church. Shortly thereafter, the commission submitted its report to the Presbytery advising removal of the Session of the First Church and appointment of another administrative commission with authority to function as a Session. The Presbytery attempted to exercise continued control over First Church by removing its ministers’ names from the church rolls but plaintiffs disregarded the orders of the commission and functioned as an autonomous body.
On April 16, 1977, plaintiffs, the church, its ministers and its governing Session, commenced this action seeking a declaration that it was free to withdraw from defendants UPCUSA and Presbytery of Albany and a permanent injunction enjoining defendants from interfering with *115 plaintiffs’ use and enjoyment of church property. In their answer, defendants opposed the action and asserted a counterclaim seeking to permanently enjoin plaintiffs from refusing to obey its directives, orders and mandates in the management and control of the church.* Following a non-jury trial, plaintiffs were granted an order permanently enjoining defendants from interfering with the property but denying declaratory relief on the withdrawal issue. Defendants’ counterclaim was dismissed.
A divided Appellate Division modified the judgment of Trial Term by reversing the grant of injunctive relief, dismissing the complaint and granting defendants’ counterclaim. The three-Judge majority of the court, in an opinion by Justice Kane, relied upon the principle of deference by civil authorities in ecclesiastical matters and held that the court should not adjudicate the claims (see Watson v Jones, 13 Wall [80 US] 679). Presiding Justice Mahoney, concurred in part. He applied the “neutral principles of law” rationale of Jones v Wolf (443 US 595) to the facts and after doing so he held for defendants on their counterclaim for injunctive relief. Dissenting Justice Casey also applied the “neutral principles of law” analysis but after analyzing the evidence he found that plaintiffs were entitled to injunctive relief and he therefore voted to affirm Trial Term’s judgment. Plaintiffs appeal only from that part of the Appellate Division order relating to injunctive relief.
Before this court, defendants characterize the present dispute as involving nothing more than a controversy over church policy and authority. To support their position they cite the allegations of plaintiffs’ complaint objecting to UPCUSA’s funding of various political and social groups and the refusal of plaintiffs to recognize the authority of the investigative commission. They contend that because this is a policy dispute the court must defer to the authority of the hierarchical church and avoid resolving the underlying question of property ownership; any other course would necessarily entangle it in church dogma and doctrine and thereby violate the First Amendment.
*116 Plaintiffs, on the other hand, view this as an action concerning only the question of property ownership, a matter which can be resolved without violating the prohibitions of the First Amendment by application of the neutral principles of law analysis. Applying neutral principles, plaintiffs conclude that they are entitled to ownership and control of the property because the deeds to the property are in the name of the local church or its trustees, the members of the local church provided all the funds for the purchase and maintenance of the church property, and the church constitution contained no express language granting a trust or proprietary right in favor of the UPCUSA.
Addressing these contentions, our analysis starts with a brief discussion of the general principles recognized by the courts in church-related disputes, then proceeds, in order, to a consideration of the deference rule, the neutral principles of law rule and the application of that rule to the facts of this case, and finally, to a consideration of implied trust principles.
I
The legal rules governing this dispute are derived from the Federal Constitution and have developed through a number of court decisions interpreting it.
The First Amendment, binding on the States through the Fourteenth, prohibits the making of “laws respecting an establishment of religion, or prohibiting the free exercise thereof” (US Const, 1st Arndt, 14th Arndt; Cantwell v Connecticut, 310 US 296 [free exercise]; Everson v Board of Educ., 330 US 1 [establishment]). Consistent with these amendments civil courts are forbidden from interfering in or determining religious disputes. Such rulings violate the First Amendment because they simultaneously establish one religious belief as correct for the organization while interfering with the free exercise of the opposing faction’s beliefs (Maryland & Va. Churches v Sharpsburg Church, 396 US 367, 369 [Brennan, J., concurring]; see Nowak, Rotunda & Young, Constitutional Law [2d ed], ch 19, § IV, pp 1071-1072; Tribe, American Constitutional Law, § 14-12, pp 870-872). The Constitution directs that religious *117 bodies are to be left free to decide church matters for themselves, uninhibited by State interference (Serbian Orthodox Diocese v Milivojevich, 426 US 696; Kedroff v St. Nicholas Cathedral, 344 US 94, 116).
In Serbian Orthodox Diocese (supra), the issues concerned the identity of the lawful bishop of the Serbian Eastern Orthodox Diocese for the United States and the validity of the division of the American-Canadian Diocese into three dioceses. A similar issue was presented in Kedroff v St. Nicholas Cathedral (supra) when the court was asked to determine which of two competing church organizations, the Russian Orthodox Church in America or its Russian counterpart, had the power to appoint the prelate of the New York Diocese. The Supreme Court refused to resolve these questions notwithstanding that the control of church properties was incidentally affected by the determinations. The court deferred to the ecclesiastical bodies because to do otherwise in an attempt to settle the property disputes would require the court to interpret church doctrine and involve it in matters which were predominantly religious disagreements.
These rulings controlled the trial court’s disposition of plaintiffs’ first demand for relief. To the extent that their complaint sought a declaration of their right to withdraw from the Presbytery, it was beyond the power of the court to grant that relief because the determination required an examination and interpretation of the authority of the Presbytery to permit or prevent withdrawal of a local church. And this was so even though the court might have found support for First Church’s claim from the facts that the church constitution is silent on the issue and there is apparent precedent for unilateral withdrawal by a local church and dismissal to another denomination.
To the extent that plaintiffs’ complaint seeks to enjoin defendants from interfering with its use of the property, however, the matter was properly entertained. At the time this action was before the court, the abstract issue of whether the local church had the right to withdraw from the Presbytery was not in the case (see Presbytery of Riverside v Community Church, 89 Cal App 3d 910, cert den 444 US 974; and Presbytery of Elijah Parish Lovejoy v *118 Jaeggi, _ SW2d _ [Mo]). The Presbytery had not yet appointed a commission to replace the church Session and plaintiffs had terminated their relations with the Presbytery and refused to recognize its authority. Thus judicial resolution of this property dispute will not cause the court to intrude into the religious area because it is not required to decide which of two competing bodies is the lawful Session with authority to control the property (cf. Serbian Orthodox Diocese v Milivojevich, 426 US 696, supra). Inasmuch as “the State has a legitimate interest in resolving property disputes, and * * * a civil court is a proper forum for that resolution” a determination of the issue submitted to us is appropriate (see Presbyterian Church v Hull Church, 393 US 440, 445; Note, Judicial Intervention in Church Property Disputes — Some Constitutional Considerations, 74 Yale LJ 1113, 1130). Indeed, the Supreme Court has specifically permitted State court resolution of church property disputes in these circumstances, i.e., when the denominational church has contested the right of the local church to withdraw, by holding that no Federal question is presented by the State court’s ruling with respect to a property dispute in favor of the withdrawing faction (see Maryland & Va. Churches v Sharpsburg Church, 396 US 367, dsmg app 254 Md 162, supra).
II
Nevertheless, defendants contend, and the Appellate Division majority held, that even if the case is viewed as a contest over the right to control use of the property, the courts are bound to defer to the highest authority in the hierarchical church pursuant to the long-standing rule of Watson v Jones (13 Wall [80 US] 679, supra). Watson, decided before the First Amendment was held applicable to the States, dealt with a dispute between two rival factions of the Walnut Street Presbyterian Church over control of the church premises. The deed to the property as well as the charter of the local church, “subjected both property and trustees alike to the operation of the general church’s fundamental laws.” The minority faction seized control of the church and in the resulting litigation, the Kentucky courts ruled in its favor. The majority faction then brought an action in Federal court which sustained their claim and *119 on appeal the United States Supreme Court affirmed. It noted that the local congregation was a member of a larger Presbyterian Church and subject to its authority and because the General Assembly had decided in favor of the majority faction, the courts were bound by that decision. Justice Miller speaking for the court stated that: “where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete [and] * * * whenever the questions of discipline, or of faith, or ecclesiastical rule, custom or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them" (13 Wall [80 US], at pp 722, 727 [emphasis added]). This language forms the basis for the “complete deference” standard of review. It provides that all members of hierarchical organizations submit themselves to the decision-making authority of the church in ecclesiastical matters, excluding civil court involvement “[i]n the absence of fraud, collusion or arbitrariness” (Gonzalez v Archbishop, 280 US 1, 16).
Although apparently absolute in scope, the Watson decision did not pass on whether the courts could decide exclusively property issues in litigation involving a hierarchical church (see Note, Judicial Intervention in Church Property Disputes — Some Constitutional Considerations, 74 Yale 1113, 1120-1121). That question was answered in Presbyterian Church v Hull Church (393 US 440, supra). On facts analogous to Watson, the court recognized that church property disputes implicate the establishment and free exercise clauses of the First Amendment but held that the courts are free to decide such disputes if they can do so without resolving underlying controversies over religious doctrine. It indorsed the “neutral principles of law” analysis which has been developed for use in all property disputes and which can be applied without “establishing” churches to which the property is awarded (Presbyterian Church v Hull Church, supra, at p 449). This rule was later restated and approved in Jones v Wolf (443 US 595, supra). *120
The neutral principles of law analysis has not been explicitly adopted by this State, although we applied the rule in Avitzur v Avitzur (58 NY2d 108, 114-115, cert den _US_, 104 Ct 76 [civil court may enforce the secular terms of a religious marriage contract (Ketubah) through application of ordinary principles of contract law]). We do so in this action. Applying that analysis, we determine that the property shall remain in the control of plaintiff First Church.
In Jones v Wolf (supra), 164 members of the Vineville Presbyterian Church voted to separate from the Presbyterian Church in the United States (PCUS), while 94 members opposed such action. The majority then united with another denomination and retained possession of local church property. The Presbytery of Augusta-Macon appointed a commission to investigate the dispute and that commission ultimately ruled that the minority faction was the “true congregation” of the local church. Members of the minority faction then sued in State court seeking declaratory and injunctive orders establishing their right to exclusive possession and use of the local church property. Applying “neutral principles of law,” the trial court granted judgment for the majority and the Georgia Supreme Court affirmed. Although the Supreme Court approved the rationale of the State courts it vacated the judgment and remanded the case for further proceedings because they had failed to address the additional complicating factor that the congregation was itself divided. That problem is absent in this case because the four members who did not *121 wish to withdraw from the Presbytery have not contested the action of the overwhelming majority of the church membership, and without the dissenters’ involvement, the case may properly be viewed as no more than a dispute between the general church and the local congregation.
In Jones the Supreme Court held that a State court is entitled to adopt a “neutral principles of law” analysis as a means of resolving church property disputes, but it is not required to do so. Judicial deference to a hierarchical organization’s internal authority remains an acceptable alternative mode of decision. We choose to recognize the neutral principles of law analysis and we apply it here. We do so in the belief that when properly applied it avoids drawing civil courts into religious controversies by focusing on evidence from which the court may discern the objective intention of the parties and it also permits the State to protect its legitimate interests in securing titles to property. The rule is explicitly designed to achieve that end (see Jones v Wolf, 443 US 595, 603-604, supra). It is completely secular in operation, it is flexible enough to accommodate all forms of religious organizations and it relies upon well-established principles of law familiar to Judges and lawyers. It also provides predictability so that religious organizations may order their affairs to account for its application. Moreover, we agree with those who have observed that the doctrine is preferable to deference because it does not prefer one group of disputants to another. The deference approach assumes that the local church has relinquished control to the hierarchical body in all cases, thereby frustrating the actual intent of the local church in some cases. Such a practice, it is said, discourages local churches from associating with a hierarchical church for purposes of religious worship out of fear of losing their property and the indirect result of discouraging such an association may constitute a violation of the free exercise clause. Additionally, by supporting the hierarchical polity over other forms and permitting local churches to lose control over their property, the deference rule may indeed constitute a judicial establishment of religion (see Adams & Hanlon, Jones v. Wolf: Church Autonomy and the Religion Clauses of the First Amendment, 128 U of Pa L Rev 1291, 1337).
*122 In applying neutral principles, the focus is on the language of the deeds, the terms of the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property (Jones v Wolf, 443 US 595, 603, supra, citing Maryland & Va. Churches v Sharpsburg Church, 396 US 367, 368, dsmg app 254 Md 162, supra). The court must determine from them whether there is any basis for a trust or similar restriction in favor of the general church, taking special care to scrutinize the documents in purely secular terms and not to rely on religious precepts in determining whether they indicate that the parties have intended to create a trust or restriction. The trial court correctly applied these principles in ruling in plaintiffs’ favor.
First, under familiar property law principles, plaintiff church held record title to the property free from any competing interests. The deeds by which plaintiff church acquired the several parcels of realty all named First Church or- its trustees as grantees, their operative provisions contained no forfeiture or reversion clauses in favor of the various grantors or UPCUSA and the record does not indicate that any of the property was acquired by restrictive gift. None of the deeds include language of trust or restriction vesting a present or future interest in the Albany Presbytery or the UPCUSA.
Turning to the local charter, plaintiff church apparently filed two certificates of incorporation, the first in 1803 and the second in 1809 and these certificates are silent on the question of how the property is to be owned.
Next, State law provides that property disputes involving the Presbyterian Church are controlled by subdivision 3 of section 69 of the Religious Corporations Law. It requires that trustees of the local church govern the property in accordance with the constitution of the UPCUSA (see, e.g., Trustees of Presbytery v Westminister Presbyt. Church, 222 NY 305). However, these provisions of the Religious Corporations Law are not applicable to churches incorporated prior to 1828 if the statute is inconsistent with the law as it existed at the time of incorporation, unless the church reincorporates after 1828 or the trustees determine *123 by resolution that the provisions of the Religious Corporations Law shall apply (Religious Corporations Law, § 24). The exception governs this case inasmuch as the law in 1803, the date of incorporation, is inconsistent with section 69 (see Matter of First Presbyt. Soc., 106 NY 251, 254), there was no reincorporation by plaintiff church subsequent to 1828 and the trustees never resolved to make the statute applicable. Indeed the fact that plaintiff church, acting through its trustees, chose not to bring itself within the scope of section 69, relying instead upon prior law giving it undisputed ownership, is evidence that ownership rests with plaintiffs.
The last item to be considered is the constitution of the denominational church, known as the Book of Order. In examining it, the court may look only to provisions relating to property and it must interpret them in a secular light. The Book contains no provision which creates an express trust in favor of the UPCUSA. But defendants rely upon the wording in two chapters to support their view that the denominational church is intended to retain control of local church property in the event of a schism. In chapter XXXII of part II, entitled “Of Incorporation and of Trustees”, section 62.11 provides that whenever a local church is dissolved, “such property as it may have * * * shall be held * * * as the presbytery may direct * * * in conformity with the Constitution of The United Presbyterian Church in the United States of America.” That provision is inapplicable because plaintiff church is not undergoing a dissolution or extinction. Defendants also refer the court to the provisions in chapter XI of part II, entitled “Of the Session”. Section 41.07 of chapter XI provides that the “session”, which is the governing body of the local church, has “exclusive authority over the uses to which the church buildings and properties may be put.” (See, also, Book of Order, ch XI, § 41.08; ch XXXII, § 62.08.) Section 41.15 authorizes the regional governing body within UPCUSA, the “presbytery”, to appoint a “commission” to take the place of the local church’s “session”, with the full powers of the “session”, in the event “the session of a particular church is unable or unwilling to manage wisely the affairs of its church”. These provisions, relied upon by the concurring Justice at the Appellate Division as establishing an *124 intent to create a beneficial interest in the denominational church, are located outside the property section of the Book of Order. They deal with church government and relate only indirectly to the control of property. They set forth the mechanism of church government in the event of a church dispute and any inquiry into their meaning by a court is constitutionally foreclosed because it would require the court to choose between the insurgent Session and the commission or “replacement Session.” Moreover, the authority of the Session to direct control of property in such a dispute is belied by the constitution itself in view of the fact that other sections of the Book ascribe to the Session power which is purely spiritual (part II, ch V, § 35.03). In view of this ambiguity, these provisions should be discounted, leaving nothing in the Book of Order to support defendants’ position.
IV
Finally, we address the argument that in the absence of a specific understanding or agreement preserving a separate entity and expressing an intention to withhold property, it is presumed that the local church intended to dedicate the property to the purposes of the larger body by voluntarily merging itself with it (see Mills v Baldwin, 362 So 2d 2 [Fla], vacated and remanded 443 US 914). This represents an application of the implied trust doctrine which we have recognized in other contexts (see St. Joseph’s Hosp. v Bennett, 281 NY 115). It is not applicable here.
There are three types of implied trusts in church property disputes: (1) an implied trust for the benefit of those members of a divided congregation who adhere to the principles of the founders of the religion (see Attorney Gen. ex rel. Mander v Pearson, 3 Mer 353, 36 Eng Rep 135); (2) an implied trust for the denominational church; and (3) an implied trust for the members of the congregation (see Note, Judicial Intervention in Disputes Over the Use of Church Property, 75 Harv L Rev 1142). Only the first two types concern us. An implied trust for the members of the congregation, by definition, would not benefit this denominational church.
*125 The first type of trust must be rejected where it leaves the courts in the position of determining what the original principles of the church were — the inquiry into doctrine precluded by Presbyterian Church v Hull Church (393 US 440, supra) and earlier State decisions (see Gram v Prussia Emigrated Evangelical Lutheran German Soc., 36 NY 161; Petty v Tooker, 21 NY 267; Robertson v Bullions, 11 NY 243; see Tribe, American Constitutional Law, § 14-12, pp 872-875). Nor can there be an implied trust of the second type, for to establish such a trust there must be a sufficient manifestation of the intention to do so. (Restatement, Trusts 2d, § 23.) First Church acquired the property on its own without any funding assistance from the denominational church and there is no evidence that it intended to hold the property in trust. The evidence is just the other way. First Church took no action from which an intent to create a trust may be implied and it had no notice or knowledge that the Presbytery or UPCUSA claimed that an implied trust existed prior to this dispute. The trustees of First Church failed to pass a resolution bringing the church within the statutory trust provision of section 69 of the New York Religious Corporations Law and no other commitment in writing was undertaken to create one (see Presbytery of Riverside v Community Church, 89 Cal App 3d 910, supra). Additionally, not only does the Book of Order contain no provision of trust, but in 1929 UPCUSA proposed an amendment to the church rules establishing a trust of all church properties for the denominational church and the amendment failed to receive the necessary votes of the Presbyteries for passage. The mere fact of First Church’s association with the denominational body, even an association lasting 200 years, does not by itself support a finding that an implied trust was created.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, without costs, and the judgment of Trial Term reinstated.
Chief Judge Cooke and Judges Jasen, Jones, Wacht-ler, Meyer and Kaye concur.
Order, insofar as appealed from, reversed, without costs, and judgment of Supreme Court, Saratoga County, reinstated.

 Plaintiffs had previously sued in the United States District Court for the Northern District of New York (Foley, J.), seeking identical relief. The requested relief was denied on the ground that the First Amendment precluded the court from ruling on the issues (First Presbyt. Church v United Presbyt. Church, 430 F Supp 450). No claim is made that res judicata principles apply because of that determination.