[961 NE2d 1107, 938 NYS2d 496]

MINDAUGAS BLAUDZIUNAS et al., Appellants, v EDWARD CARDINAL EGAN, as Cardinal of the Archdiocese of New York and as Trustee of OUR LADY OF VILNA CHURCH, et al., Respondents.

Argued November 15, 2011; decided December 13, 2011

## POINTS OF COUNSEL

*Law Office of Harry Kresky,* New York City (*Harry M. Kresky* of counsel), for appellants. I. The court below misconstrued Religious Corporations Law § 5. (*Morris v Scribner,* 69 NY2d 418; *People v Finnegan,* 85 NY2d 53; *Trustees of Presbytery of N.Y. v Westminister Presbyt. Church of W. Twenty-Third St.,* 222 NY 305; *Rangolan v County of Nassau,* 96 NY2d 42; *Carney v Philippone,* 1 NY3d 333; *Matter of Smith v Calvary Baptist Church,* 35 AD3d 749; *Watson v Christie,* 288 AD2d 29; *Baxter v McDonnell,* 155 NY 83; *People's Bank v St. Anthony's R.C. Church,* 109 NY 512; *Committee to Save St. Brigid's Inc. v Egan,* 45 AD3d 375.) II. Consideration of the application of Religious Corporations Law § 5 does not involve the Court in the adjudication of matters that are ecclesiastical in nature. (*Presbyterian Church in U. S. v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440; *Jones v Wolf,* 443 US 595; *Avitzur v Avitzur,* 58 NY2d 108; *Sieger v Union of Orthodox Rabbis of U.S. & Can.,* 1 AD3d 180; *Episcopal Diocese of Rochester v Harnish,* 11 NY3d 340; *Morris v Scribner,* 69 NY2d 418; *Saint Nicholas Cathedral of Russian Orthodox Church in N. Am. v Kedroff,* 306 NY 38; *Westminster Presbyt. Church of W. Twenty-Third St. v Trustees of Presbytery of N.Y.,* 211 NY 214; *Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana,* 9 NY3d 282.) III. Appellants state a claim for breach of fiduciary duty. (*Barr v Wackman,* 36 NY2d 371; *Auerbach v Bennett,* 47 NY2d 619; *Higgins v New York Stock Exch., Inc.,* 10 Misc 3d 257; *Foley v D'Agostino,* 21 AD2d 60; *Matter of Manhattan Eye, Ear & Throat Hosp. v Spitzer,* 186 Misc 2d 126; *Vione v Tewell,* 12 Misc 3d 973;

*Martinelli v Bridgeport R.C. Diocesan Corp.*, 196 F3d 409; *Sanders v Casa View Baptist Church*, 134 F3d 331; *Matter of Smith v Calvary Baptist Church*, 35 AD3d 749; *Watson v Christie*, 288 AD2d 29.) IV. To the extent the court below exempts Roman Catholic religious corporations from requirements to which other religious and not-for-profit corporations are subject, it violates the Establishment Clause of the First Amendment. (*County of Allegheny v American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 US 573; *Wallace v Jaffree*, 472 US 38; *Swanson By & Through Swanson v Guthrie Ind. School Dist. No. I-L*, 135 F3d 694; *United Christian Scientists v Christian Science Bd. of Directors, First Church of Christ, Scientist*, 829 F2d 1152.) V. The fact that the church has been suppressed does not render section 5 of the Religious Corporations Law or the above principles inapplicable.

*Leahey & Johnson, P.C.*, New York City (*Peter James Johnson, Jr., Peter James Johnson, Joanne Filiberti* and *Gabriel M. Krausman* of counsel), for respondents. I. The Appellate Division, First Department, followed the statutory framework adopted by the New York State Legislature almost 150 years ago and the well-settled law interpreting the Religious Corporations Law to properly reject appellants' tortured and unconstitutional interpretation of Religious Corporations Law § 5. (*Committee to Save St. Brigid's Inc. v Egan*, 45 AD3d 375; *Walker Mem. Baptist Church, Inc. v Saunders*, 285 NY 462; *Fiske v Beaty*, 206 App Div 349, 238 NY 598; *Islamic Ctr. of Harrison, Pa. v Islamic Science Found.*, 216 AD2d 357; *Metropolitan Baptist Church Inc. v Braxton*, 285 App Div 1044; *Bank of Manhattan Trust Co. v 2166 Broadway Corp.*, 142 Misc 910; *Maryland & Virginia Eldership of Churches of God v Church of God at Sharpsburg, Inc.*, 396 US 367; *Committee to Save St. Brigid v Egan*, 30 AD3d 356.) II. The Appellate Division, First Department, correctly ruled that the decision to demolish the church building of the subject suppressed incorporated parish, duly made by the archbishop and the trustees of the parish in accordance with applicable canon law and church bylaws, was ecclesiastical in nature, and properly rejected the invitation to interfere in the governance and administration of a hierarchical church in accordance with the Free Exercise Clauses of the United States and New York State Constitutions and the First and Fourteenth Amendments of the United States Constitution. (*Filetto v St. Mary of Assumption Church of Binghamton*, 61 Misc 2d 278; *Watson v Jones*, 80 US 679; *Maryland & Virginia Eldership of Churches of God v Church of God at Sharpsburg, Inc.*, 396 US

367; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich*, 426 US 696; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America*, 344 US 94; *Faith United Christian Church v United Christian Church*, 266 AD2d 428; *Burke v Rector, Churchwardens & Vestrymen of Trinity Church*, 63 Misc 43; *Committee to Save St. Brigid v Egan*, 30 AD3d 356; *Jones v Wolf*, 443 US 595; *Committee to Save St. Brigid's Inc. v Egan*, 45 AD3d 375.) III. The Appellate Division, First Department, correctly ruled that the parish's ecclesiastical existence has been extinguished, and appellants, as former parishioners of a now defunct religious society, had no standing to bring their action.

### OPINION OF THE COURT

JONES, J.

The issue before this Court is whether section 5 of the Religious Corporations Law grants plaintiffs, former parishioners of a church incorporated as a religious corporation, the authority to challenge the board of trustees' decision to demolish the church. We hold that it does not.

In 1909, Our Lady of Vilna Church—a Roman Catholic church established to serve a Lithuanian community in New York City—was incorporated by the then board of trustees, comprised of the archbishop of the Roman Catholic Diocese of New York, the vicar general of the diocese, the rector of Our Lady of Vilna and two laymen trustees selected and appointed by the ex officio members, pursuant to the Religious Corporations Law. The land on which the church building and former rectory are located was deeded to the church corporation in 1910 and 1912.

At a special meeting of the board of trustees in 1980, the church adopted bylaws, consistent with the Religious Corporations Law and Canon Law of the Roman Catholic Church, regarding the governance of the church corporation and the rights and duties of the trustees. In relevant part, it defined "Church" as the "ecclesiastical entity (parish) that was incorporated under civil law as this Corporation" and "Members of the Church" to "mean the parishioners of the aforesaid ecclesiastical entity (parish)."[1] The bylaws also explained the powers of the board of trustees and the limitations upon said body. It stated: "The Trustees of the Corporation shall consti-

---

1. The bylaws do not identify or define any group of individuals as "members of the corporation," a term used in the Religious Corporations Law.

tute its governing body . . . No act or proceeding of the Trustees shall be valid without the sanction of the Archbishop." The bylaws also conferred upon the trustees "custody and control of all the temporalities and property belonging to the Corporation . . . in accordance with the discipline, rules and usages of the Roman Catholic Church and of the Archdiocese for the support and maintenance of the Church."

In 2006, the archbishop of the Diocese of New York, Edward Cardinal Egan, issued a decree of suppression, an ecclesiastical decision to close the church building and extinguish the parish, due to "a serious decline in its parish population, the need to provide for enhanced stewardship of Archdiocesan resources, and optimum use of Archdiocesan clergy and lay personnel to better serve the People of God." As stated in the decree, the archbishop proceeded pursuant to "Canon [Law] 515.2,[2] after having first heard the Presbyteral Council of the Archdiocese of New York and consulted with the Regional Vicar, the administrator, and neighboring pastors." In 2007, after the archdiocese issued a press release regarding its decision to close the church, two former lay trustees of the church commenced an action to challenge the suppression decree. In August 2007, that action was discontinued by stipulation.

In October 2007, the board of trustees of the religious corporation convened a special meeting. A quorum was present—the three ex officio members and a lay trustee. At the meeting, the lay trustee was reappointed, and another was appointed. According to the meeting's minutes, the archbishop reported upon his "ecclesiastical suppression of the parish and closure of the church building due to the longstanding decline in parish population, lack of attendance and paucity of requests for baptisms, weddings and funerals, rarely held Lithuanian language Masses and the need to enhance and preserve resources to better serve the faithful." Additionally, a report concerning the condition of the building detailed an "historical overview of the problems with the building . . . the building's condition . . . [and a] conclu[sion] that there was a significant issue with respect to structural condition." After noting that there were "no plans to reopen the church for worship," the board of trustees unanimously adopted a resolution to demolish the building.

---

**2.** Canon Law 515.2 provides, "It is only for the diocesan bishop to erect, suppress, or alter parishes. He is neither to erect, suppress, nor alter notably parishes, unless he has heard the presbyteral council."

In February 2008, plaintiffs, former parishioners of the church, commenced this action and moved for a preliminary injunction seeking to enjoin defendants, the board of trustees, from demolishing the church building. Supreme Court denied plaintiffs' motion and granted defendants' motion to dismiss the complaint.

The Appellate Division affirmed. The court concluded, inter alia, that the Religious Corporations Law "does not require that the demolition of the church be authorized by the parishioners," but "vest[s] approval authority for all actions taken by the trustees of an incorporated Roman Catholic church in the archbishop or bishop of the diocese to which that church belongs" (74 AD3d 697, 698 [2010]). One justice dissented. The Appellate Division granted plaintiffs' motion for leave to appeal to this Court and certified a question. We now affirm.

"[R]eligious bodies are to be left free to decide church matters for themselves, uninhibited by State interference," save for matters that can be resolved through the application of "neutral principles of law" (*First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110, 116-117, 120 [1984]). In *Jones v Wolf*, the United States Supreme Court recognized that "[t]he primary advantages of the neutral-principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and policy" (443 US 595, 603 [1979]). It "relies exclusively on objective, well-established concepts of trust and property law familiar to lawyers and judges . . . [and] promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice" (*id.*). More specifically, the

> "[a]pplication of the neutral principles doctrine requires the court to focus on the language of the deeds, the terms of the local church charter, the State statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of the church property" (*Episcopal Diocese of Rochester v Harnish*, 11 NY3d 340, 350 [2008] [internal quotation marks and citation omitted]).

Notwithstanding the bylaws of this church corporation, which grant the board of trustees custody and control of the church property, plaintiffs rely upon Religious Corporations Law § 5 to

challenge the board of trustees' decision to demolish the church building. Plaintiffs contend that the decision to demolish the church building must be authorized by the parishioners, who they claim are members of the church corporation. This argument is unavailing.

Section 5 of the Religious Corporations Law, in relevant part, vests the custody and control of a religious corporation's real property in the board of trustees, and directs the administration of such property

> "in accordance with the discipline, rules and usages of the corporation . . . to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation, or, providing the members of the corporation at a meeting thereof shall so authorize, of some religious, charitable, benevolent or educational object conducted by said corporation or in connection with it, or with the denomination, if any, with which it is connected."

It further states

> "[t]he trustees of an incorporated Roman Catholic Church . . . shall not transfer any property as herein provided without the consent of the archbishop or bishop of the diocese to which such church belongs or in case of their absence or inability to act, without the consent of the vicar general or administrator of such diocese" (Religious Corporations Law § 5).

Relevant to Roman Catholic churches, Religious Corporations Law §§ 91 and 92 explain the governance of an incorporated Roman Catholic church and the division and disposition of parish property, respectively. Section 91 requires

> "[t]he archbishop or bishop and the vicar-general of the diocese to which any incorporated Roman Catholic church belongs, the rector of such church, and their successors in office . . . by virtue of their offices, [to] be trustees of such church . . . [as well as t]wo laymen, members of such incorporated church."

It further states:

> "No act or proceeding of the trustees of any such incorporated church shall be valid without the sanction of the archbishop or bishop of the diocese to which such church belongs, or in case of their absence or inability to act, without the sanction of the vicar-general or of the administrator of such diocese."

Section 92 recognizes the jurisdiction of a Roman Catholic bishop over an individual parish and his authority to act independently or with the consent of the trustees of the original Roman Catholic church corporation to transfer property to a new or second Roman Catholic church corporation.

Section 5 of the Religious Corporations Law is consistent with sections 91 and 92 and the bylaws of the church corporation. They uniformly recognize the authority of the board of trustees and the archbishop to control church property. However, plaintiffs characterize themselves and other former parishioners as "members of the corporation," pursuant to section 5 of the Religious Corporations Law, and allege that they have the collective right to veto the demolition decision by refusing to give the requisite authorization relating to the use of church resources when they are used for some "religious, charitable, benevolent or educational object."

Applying the neutral principles of law doctrine, no such right or authority has been reserved for the benefit of the parishioners. Pursuant to the bylaws, parishioners are members of the ecclesiastical body—not members of a corporation. Such status does not confer upon them the rights and duties as members of the religious corporation. Nor have plaintiffs pointed to any statute, corporate governance document, church canon or other provision that identifies current or former parishioners as members of the corporation. Given the deed to the property at issue is in the name of the religious corporation and the corporation's bylaws and the Religious Corporations Law unequivocally grant the trustees, as well as the archbishop specifically, the power to control and administer the property of the church corporation, the authority to demolish the church building was within their purview. Thus, plaintiffs have no basis to challenge the actions properly voted upon by the board of trustees and sanctioned by the archbishop.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order affirmed, etc.