Funti v Andrews (2026 NY Slip Op 00012)

Funti v Andrews

2026 NY Slip Op 00012

Decided on January 06, 2026

Appellate Division, First Department

Kern, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

 
Index No. 365586/21|Appeal No. 5056|Case No. 2024-04456|

[*1]Lamia Funti, Respondent,
vMarcus Andrews, Appellant. Bishop Anba David, Father Gregory Saroufeem, St. Mary & St. Mark Coptic Orthodox Church, and the Coptic Orthodox Diocese of New York and New England, Amici Curiae.

Defendant appeals from an order of the Supreme Court, New York County (Douglas E. Hoffman, J.), entered July 9, 2024, which to the extent appealed from as limited by the briefs, denied defendant's CPLR 3211 motion to dismiss the complaint in this divorce action for failure to state a claim and granted plaintiff's cross-motion declaring the parties' marriage valid.

Cohen Stine Kapoor LLP, New York (Ankit Kaporr and Harriet Newman Cohen of counsel), for appellant.
Rabin Pfeffer & Partners LLP, New York (Bonnie E. Rabin and Deirdre L. Fletcher of counsel), for respondent.
Nelson Madden Black LLP, New York (Barry Black of counsel), Alliance Defending Freedom, Lansdowne, VA (Matthew W. Hoffmann of the bar of the State of Virginia, admitted pro hac vice, of counsel), Alliance Defending Freedom, Lawrenceville, GA (Rory T. Gray of the bar of the State of Georgia, admitted pro hac vice, of counsel), Alliance Defending Freedom, Washington, DC (John J. Bursch of the bar of the State of Michigan, admitted pro hac vice, of counsel and Tyler W. Shannon of the bar of the District of Columbia, admitted pro hac vice, of counsel), for amici curiae.

Kern, J.

In this action for divorce, we are asked to determine whether the parties are validly married under the New York Domestic Relations Law despite not obtaining a marriage license prior to their alleged wedding ceremony. Pursuant to Domestic Relations Law § 25, a marriage is not void for failure to obtain a marriage license if the marriage is solemnized. A marriage is solemnized under Domestic Relations Law § 12 when a couple solemnly declares in the presence of a clergyman, magistrate, or one-day marriage officiant and attending witness or witnesses that they take each other as spouses. Even when the parties do not make this solemn declaration that they take each other as spouses, a marriage will still be valid without a license pursuant to Domestic Relations Law § 12 when the marriage is solemnized in the manner used and practiced in the couple's respective denomination. As we find that neither of these scenarios occurred, we hold that the parties are not validly married pursuant to the Domestic Relations Law.
On July 29, 2017, the parties took part in a baptism of their son at a Coptic Orthodox Church performed by Bishop Anba David of the Coptic Orthodox Diocese of New York and New England and attended by the church's priest, Father Gregory Saroufeem. After the baptism was completed, plaintiff was asked if she wished to be baptized into the Coptic Orthodox Church. She assented, and after plaintiff underwent certain preparations, the Bishop performed the baptism.
After the second baptism, plaintiff contends that the Bishop asked if she and defendant wished to be married, she and defendant agreed, and the Bishop performed an impromptu wedding ceremony. Defendant contends that the ceremony was a family blessing and not a marriage. It is undisputed that the parties did not have a marriage license, did not exchange rings, made no vows during the ceremony and did not execute a certificate of marriage, among other traditional requirements of the Coptic Church.
Several years later, plaintiff commenced this divorce action. Defendant moved to dismiss, asserting, as relevant here, that the parties were not married. In support of his motion, he included the affidavit of Bishop David, in which the Bishop unequivocally stated that he had performed a blessing and not a marriage. Plaintiff cross-moved for a determination that the parties had been married on July 29, 2017. Supreme Court held the motions in abeyance, pending a hearing on the issue of whether the parties were in fact married.
At the hearing, the court heard testimony from the parties, the Bishop, Father Gregory, and others including some of the parties' friends who attended the ceremony that day. Both parties also submitted reports from experts on the Coptic religion. As part of his testimony, the Bishop testified about what is required to get married in the Coptic Church. The requirements outlined by the Bishop were affirmed by defendant's expert and were not disputed by plaintiff.
Following the hearing, Supreme Court issued an extensive decision denying defendant's motion to dismiss and granting plaintiff's motion for a determination that the parties had been married that day. Throughout its decision, the court reiterated that it was looking at the facts from a neutral perspective so as to avoid constitutional concerns about religious entanglement that might arise by looking into the religious details of a Coptic marriage ceremony. The court began by observing that New York recognizes a valid religious marriage even if a marriage license was not obtained, so long as it was solemnized between persons of full age, where the marriage was performed and solemnized in accordance with established religious ritual and practice. However, the court stated that its ability to hold the marriage valid or invalid could not depend on the parties' religious affiliation or the court's interpretation of their religious observance because to hold otherwise would violate the First Amendment's prohibition on religious entanglement. To that end, the court concluded that it had to apply neutral principles of law without reference to religious principles. The court reviewed relevant case law, and concluded that the question before it was whether, applying neutral principles of law, the parties' religious ceremony created a civil marriage pursuant to the Domestic Relations Law.
Having decided the standard it would apply to determine whether the parties were married, Supreme Court then weighed the evidence before it. The court found neither of the parties to be entirely credible, which led the court to rely on the "uncontroverted testimony and exhibits as opposed to the modicum of credible recollections." Of this uncontroverted testimony, the court did not apply any weight to Bishop David's testimony about the marriage requirements of the Coptic Church. Instead, the court stated that the main factors leading to its conclusion that the parties had participated in a religious solemnized ceremony were that defendant had transferred real property to plaintiff after the ceremony, filed court documents in which he swore the parties were married, and hired matrimonial counsel who filed a suit for divorce, which was never served and was withdrawn. The court also stated that the luncheon following the ceremony was the "final important piece of the 'marriage' puzzle" because some of the guests at the luncheon gave toasts congratulating the parties on the baptism of their child, plaintiff's baptism, and the wedding. Finally, the court noted that both Father Gregory and plaintiff believed the parties were married, and that although defendant stated that he did not think he was married, his actions "paint[ed] a clear and undisputed picture that he could have only thought that he was married and not otherwise." By a preponderance of the evidence, the court therefore held that plaintiff had "more than carried her burden" to show that there was a religious marriage ceremony and that the ceremony was sufficient to have created a civil marriage, such that the parties were considered married civilly by New York State. Defendant appealed and we now reverse.
Pursuant to the Domestic Relations Law, a couple must procure a marriage license to get married in New York (see Domestic Relations Law § 13). Once the parties obtain a license, the marriage is not valid unless solemnized by, among others, a clergyperson or government official (see Domestic Relations Law § 11). However, pursuant to Domestic Relations Law § 25, "[n]othing in this article contained shall be construed to render void by reason of a failure to procure a marriage license any marriage solemnized between persons of full age." Thus, under the Domestic Relations Law, a marriage between parties of full age will be valid, even without a marriage license, in instances where it is solemnized (see Domestic Relations Law §§ 12, 25).
Domestic Relations Law § 12 defines what it means for a marriage to be solemnized. It states:
"No particular form or ceremony is required when a marriage is solemnized as herein provided by a clergyman, or magistrate, or one-day marriage officiant as designated by a town or city clerk pursuant to section eleven-d of this article, but the parties must solemnly declare in the presence of a clergyman, magistrate, or such one-day marriage officiant and the attending witness or witnesses that they take each other as spouses. In every case, at least one witness beside the clergyman, magistrate, or such one-day marriage officiant must be present at the ceremony."
"The preceding provisions of this chapter, so far as they relate to the manner of solemnizing marriages, shall not affect marriages among the people called friends or quakers; nor marriages among the people of any other denominations having as such any particular mode of solemnizing marriages; but such marriages must be solemnized in the manner heretofore used and practiced in their respective societies or denominations, and marriages so solemnized shall be as valid as if this article had not been enacted."
Since it is undisputed that the parties here did not obtain a marriage license, we must determine whether the marriage was solemnized pursuant to Domestic Relations Law § 12 so as to create a valid marriage. The Domestic Relations Law provides that a marriage can be solemnized when the parties "solemnly declare in the presence of a clergyman, magistrate, or such one-day marriage officiant and the attending witness or witnesses that they take each other as spouses" (Domestic Relations Law § 12). In the present case, there is no dispute that the parties did not solemnly declare that they took each other as spouses so as to create a valid marriage under the first paragraph of Domestic Relations Law § 12.
Pursuant to the second paragraph of Domestic Relations Law § 12, a marriage can be valid even where the parties do not solemnly declare that they take each other as spouses when the ceremony is "solemnized in the manner heretofore used and practiced in their respective societies or denominations" (id.). Therefore, this Court must evaluate whether the ceremony the parties participated in was "solemnized in the manner heretofore used and practiced" in the Coptic Church.
As an initial matter, Supreme Court correctly noted that there are potential constitutional implications when reviewing whether a ceremony was solemnized in accordance with certain religious traditions. As the Court of Appeals explained in Matter of Congregation Yetev Lev D'Satmar, Inc. v Kahana (9 NY3d 282 [2007]):
"The First Amendment forbids civil courts from interfering in or determining religious disputes, because there is substantial danger that the state will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrines or beliefs (see Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich, 426 US 696 [1976]). Civil disputes involving religious parties or institutions may be adjudicated without offending the First Amendment as long as neutral principles of law are the basis for their resolution (see First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am., 62 NY2d 110 [1984]; Park Slope Jewish Ctr. v Congregation B'nai Jacob, 90 NY2d 517, 521 [1997], citing Jones v Wolf, 443 US 595 [1979]). The 'neutral principles of law' approach requires the court to apply objective, well-established principles of secular law to the issues (First Presbyt. Church, 62 NY2d at 119-120). In doing so, courts may rely upon internal documents, such as a congregation's bylaws, but only if those documents do not require interpretation of ecclesiastical doctrine. Thus, judicial involvement is permitted when the case can be 'decided solely upon the application of neutral principles of . . . law, without reference to any religious principle' (Avitzur v Avitzur, 58 NY2d 108, 115 [1983])" (id. at 286).
When applying the second paragraph of Domestic Relations Law § 12, there is an inherent concern about how to determine whether a ceremony was solemnized in accordance with the manner used and practiced by a given religious denomination without becoming entangled in religious controversy. Reflecting this concern, cases interpreting whether a religious ceremony has been properly solemnized pursuant to the second paragraph of Domestic Relations Law § 12 have largely fallen into two categories.
In the first category are cases such as Madireddy v Madireddy (66 AD3d 647 [2d Dept 2009], appeal dismissed 14 NY3d 765 [2010]), where the parties dispute what is required for a given ceremony to be solemnized in the manner used and practiced in their respective societies or denominations.In Madireddy, the parties disputed what ceremonies were necessary to constitute a valid Hindu marriage between the Reddy caste of Sudras in the region of Andhra Pradesh, India in 1952 (id. at 648). In finding that the parties were married, the trial court "essentially determined that the performance of the ceremonies testified to by the plaintiff constitute a valid Hindu marriage. . .and that the defendant's assertions to the contrary are incorrect" (id.). The Appellate Division, Second Department reversed the trial court's determination that the parties were validly married and dismissed the complaint on the basis that the court's determination would violate the First Amendment's entanglement doctrine (id. at 648-649). The court explained:
"[t]he validity of the parties' alleged marriage, entered into in 1952, must be determined by analyzing the various and customary rites, customs and practices of the Hindu religion of a particular caste in a particular region. This analysis is entrenched in religious doctrine and cannot be resolved by the application of neutral principles of law" (id. at 648).
Since the trial court was "called upon to settle a religious controversy. . .[it was] without jurisdiction. . .because to do so would require the court to review and interpret religious doctrine and resolve the parties' religious dispute, which the court is proscribed from doing so under the First Amendment entanglement doctrine" (id. at 648-649).
Another such case is Bernstein v Benchemoun (216 AD3d 893 [2d Dept 2023], lv denied 50 NY3d 906 [2023]). In Bernstein, the parties were married in a Jewish religious ceremony in Florida, where they executed a religious marriage contract known as a ketubah but did not obtain a marriage license from the state of Florida (id. at 893-894). The parties then came to New York, where they executed a second ketubah in the presence of a rabbi (id. at 894). The plaintiff contended that a marriage was solemnized in New York when the parties executed a second ketubah (id.). However, the defendant submitted testimony from the rabbi who supervised the execution of the second ketubah, who stated that the second ketubah could not have solemnized the marriage since the parties were already married under Jewish law (id.). The court determined that resolving the parties' dispute over whether a second ketubah properly solemnized the marriage "would require an analysis of religious doctrine which could offend the First Amendment of the United States Constitution" and dismissed the complaint (id.).
The common theme in these cases is that because the parties disputed what constituted the manner heretofore used and practiced in their respective societies or denominations to solemnize a marriage, the courts lacked a neutral standard to apply in their evaluation of whether the religious ceremonies fulfilled the solemnization requirements of Domestic Relations Law § 12. To analyze the facts in these cases would have required the courts to make their own determination of the religious standards of a given religion, which could have violated the First Amendment. In these cases, the correct procedure is not to consider secular factors to determine if the ceremony was properly solemnized, but to dismiss the complaint.
The second category of cases involve situations where the parties do not dispute what is required for a given ceremony to be solemnized in the manner used and practiced in their respective societies or denominations. This provides a reviewing court with a neutral standard to weigh the evidence against, so it can determine whether a given religious ceremony complied with the solemnization requirements of Domestic Relations Law § 12 without interpreting religious doctrine and running afoul of the First Amendment.
For example, in Spalter v Spalter (234 AD3d 508 [1st Dept 2025]), the parties did not dispute that they took part in a religious wedding ceremony officiated by a rabbi under a chuppah, featuring traditional Jewish rites and blessings, and that they obtained a ketubah signed by two witnesses, all of which was sufficient to solemnize the marriage (id. at 508). This Court held that the parties' marriage was valid under Domestic Relations Law § 12, even though the parties did not obtain a marriage license and signed a document stating that they did not intend for the marriage to be legally recognized under New York law (id. at 509).
Likewise, in Hirsh v Stern (83 AD3d 783 [2d Dept 2011]), the court held that the parties were validly married as it was undisputed they participated in a ceremony that comported with the solemnization requirements articulated in Domestic Relations Law § 12 (id. at 784). The court noted that this determination "did not require inquiry into religious doctrine, but only into the requirements of Domestic Relations Law § 12," and denied the defendant's motion for a determination that the marriage was null and void because "nothing in the defendant's submissions cast doubt on the validity of the marriage under Domestic Relations Law § 12" (id. at 784 [internal citation omitted]).
The legal principle underlying the second category of cases is that it is not impermissible for civil courts to decide whether a religious ceremony is properly solemnized under Domestic Relations Law § 12 based on uncontroverted evidence regarding what a given religion's requirements are for a valid marriage (see Ahmed v Ahmed, 55 AD3d 516, 516 [2d Dept 2008]; Persad v Balram, 187 Misc 2d 711, 713 [Sup Ct, Queens County 2001]). Indeed, the express language of the second paragraph of Domestic Relations Law § 12 requires the court to make this determination.
We find that this case falls squarely in the second category of cases where the court can make a determination about what is required for a ceremony to be solemnized in the manner used and practiced in a given religious denomination without becoming entangled in a religious dispute. There is no dispute in this case about what the requirements are for a marriage to be solemnized in the Coptic Church. Bishop David laid out what the requirements are for solemnization, which were affirmed by defendant's expert. The Bishop testified that a couple must be engaged for at least 40 days before the wedding, although on occasion the church allows a 30-day engagement. He explained that this is to allow for an announcement that the people were getting married and for any objection to the marriage. The Bishop then explained that the couple is required to take Canaprep, which is a course to prepare them for marriage. Each party to the marriage also has to obtain a document of impediment from their priest that confirms they are not already married and if they had been previously married, and the other party to the marriage must sign it to indicate that they knew about the prior marriage and children, if any. The Bishop also testified that the couple needs to obtain a marriage license prior to the ceremony.
Bishop David also explained what occurs during the Coptic ceremony itself. He stated that, during the ceremony, a declaration is undertaken, which "means this person is marrying that person which means no one else can marry either of them." Then, there is a vestment prayer, readings, a matrimonial prayer, the Gospel and the Pauline, anointment with oil, and the prayer on the crowns, which is called the crowning ceremony. Finally, there is an invocation of the holy spirit to come down upon them and bless the couple and "they become one." The commandments are then given to the couple, and at the conclusion of the ceremony, the priest registers the marriage with the City.
Bishop David further testified that, during a Coptic wedding ceremony, the couple does not solemnly declare in his presence that they take each other as husband and wife and do not recite oral vows. Rather, the exchange of rings means that the woman takes the man as her husband and the man takes the woman as his wife. He stated that the premarital course that all couples must take prior to marriage instructs the couple that the exchanging of rings was the exchange of vows between them.
Plaintiff does not dispute that these are the requirements for solemnization in the Coptic Church. Plaintiff's expert did not address the requirements for solemnization. Instead, plaintiff's expert reviewed still photographs of the ceremony along with information provided by plaintiff's attorneys and concluded that a wedding ceremony had taken place on the date in question. Specifically, plaintiff's expert believed that a wedding had taken place because defendant wore a robe that men must wear during the Coptic wedding ceremony; the couple participated in a crowning ceremony using crowns of red ribbons as substitutes for the typical golden crowns; plaintiff wore a red ribbon around her shoulders and torso, which is an indication of being a Coptic bride; plaintiff stood to the right of defendant during the ceremony, which is a deliberate custom in Coptic weddings; and the couple took communion, which is an expected custom following Coptic weddings. However, plaintiff's expert did not state that any of the above evidence, on its own or together, would be enough for a marriage to be properly solemnized in the Coptic Church. The only time plaintiff's expert engaged with the Bishop's testimony was to agree with the Bishop that no vows were exchanged between the couple on the day of the ceremony because no vows are ever exchanged between couples in Coptic wedding ceremonies. Plaintiff's expert did not dispute the Bishop's testimony that the exchanging of rings substitutes for the exchange of vows in the Coptic ceremony.
Since the record in the present case contains undisputed evidence of what the Coptic Church requires for a valid marriage, a determination of whether the ceremony was properly solemnized does not require inquiry into religious doctrine, but only into the requirements of Domestic Relations Law § 12 (see Hirsh, 83 AD3d at 784). Consistent with the second category of cases discussed above, we now apply the facts to the neutral standard provided by the Bishop's undisputed testimony about what is required for a ceremony to be properly solemnized in the Coptic Church.
Based on the neutral standard provided by the Bishop's undisputed testimony, we find as a matter of law that the parties' ceremony was not solemnized under the Domestic Relations Law (see Domestic Relations Law §§ 12, 25). There is no question that the couple did not exchange rings during the ceremony, nor did they recite oral vows. Father Gregory testified that he did not hear an invocation over the parties to bless them and to make them one. Although there was an unsigned marriage template prepared by Father Gregory, there was no marriage certificate signed by the parties, no witness signatures, and no record of the marriage within the Church records. Moreover, the record does not contain evidence about whether the parties were engaged and for how long, proof that the parties completed the courses required by the church for couples to get married, or documents verifying whether either party had been previously married. Based on the Bishop's undisputed testimony, the failure to show compliance with one of these requirements would be enough to demonstrate that the ceremony at issue was not solemnized in the manner heretofore used and practiced in the Coptic Church. Here, plaintiff failed to show that the parties complied with any of these requirements. As the ceremony was not properly solemnized for the purposes of the Domestic Relations Law, the parties are not validly married and defendant's motion to dismiss the complaint should have been granted.
Although Supreme Court properly determined that this case could be adjudicated using neutral principles of secular law, its effort to avoid the constitutional concerns involved in Domestic Relations Law § 12's religious ceremony analysis led it to disregard the Bishop's undisputed testimony establishing the requirements for proper solemnization in the Coptic Church and consider secular factors instead. This approach departs from the two categories of cases discussed above, is not supported by other case law and violates the express language of the second paragraph of Domestic Relations Law § 12. In support of its approach, the court cited an extended passage from T.I. v R.I. (83 Misc 3d 800 [Sup Ct, Kings County 2024]), which considered secular factors to determine whether a couple remained civilly married after the husband had allegedly obtained an invalidation of their religious marriage. However, unlike the instant case, the court in T.I. was not asked to make a determination about solemnization because the parties did not dispute that they had previously participated in a properly solemnized religious ceremony that created a valid marriage pursuant to the Domestic Relations Law. T.I. is therefore entirely distinguishable from the instant case and its analysis using secular factors is inapposite.
Additionally, to the extent plaintiff cites Devorah H. v Steven S. (49 Misc 3d 630 [Sup Ct, NY County 2015]) for the proposition that factors such as the parties' subjective beliefs as to the validity of their marriage are properly considered in an analysis of whether a given religious ceremony was sufficient to create a civil marriage, this Court has declined to follow that approach (see Spalter, 234 AD3d at 509 ["That the parties may not have intended to have their marriage legally recognized under New York law is not dispositive because 'while marriage is a contract between two consenting individuals, it is a special status governed by laws and the State and not determined by those entering the contract'"]).
Finally, even assuming that the parties' alleged marriage could not be evaluated using neutral principles of secular law because plaintiff disputed what is required for a marriage to be properly solemnized in the Coptic Church, defendant's motion should still have been granted. In this alternative scenario, consistent with the first category of cases discussed above, a determination as to whether the parties were married in a religious ceremony could only be made by "analyzing the various and customary rites, customs, and practices of the [Coptic] religion," and thus would improperly involve the court in a religious matter (Madireddy, 66 AD3d at 648). Any finding as to whether there was a solemnized marriage sufficient to meet the requirements of Domestic Relations Law §§ 12 and 25 could thus offend the First Amendment, which, as discussed above, prevents civil courts from engaging in an analysis of religious doctrine (see First Presbyt. Church of Schenectady, 62 NY2d at 116; see also Bernstein, 216 AD3d at 894; Madireddy, 66 AD3d at 648). Therefore, in this scenario, Supreme Court could not have determined that this was a cognizable marriage in New York and the complaint should have been dismissed.
Accordingly, the order of the Supreme Court, New York County (Douglas E. Hoffman, J.), entered July 9, 2024, which to the extent appealed from as limited by the briefs, denied defendant's CPLR 3211 motion to dismiss the complaint in this divorce action for failure to state a claim and granted plaintiff's cross-motion declaring the parties' marriage valid, should be reversed, on the law, without costs, the motion granted, and the cross-motion denied. The Clerk is directed to enter judgment accordingly.
Order, Supreme Court, New York County (Douglas E. Hoffman, J.), entered July 9, 2024, which to the extent appealed from as limited by the briefs, denied defendant's CPLR 3211 motion to dismiss and granted plaintiff's cross-motion declare the parties' marriage valid, reversed, on the law, without costs, the motion granted, and the cross-motion denied. The Clerk is directed to enter judgment accordingly.
Opinion by Kern, J. All concur.
Kern, J.P., Scarpulla, Mendez, Rodriguez, Rosado, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 6, 2026